IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JOSEPH WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. |
| | ) | 1:17-CV-140-BL |
| JOHN WEEKS, Judge, | ) | |
| 42nd District Court, | ) | |
| Callahan County, Texas, *et al.*, | ) | |
| | ) | |
| Defendant(s). | ) | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

This case was reassigned to the United States Magistrate Judge under Second Amended

Special Order No. 3-301. Although Plaintiff Joseph Williams was informed of the right to consent

to the disposition of this case by a magistrate judge under 28 U.S.C. § 636(c), he has chosen to not

consent, and therefore the undersigned magistrate judge enters this report and recommendation under

the authority of 28 U.S.C. 636(b). Based on the relevant filings and applicable law, as to Plaintiff's

claims asserted in his amended complaint and more definite statement, those claims should be

**DISMISSED** with prejudice. After entry of this report and recommendation, the case should be

reassigned to Senior United States District Judge Sam R. Cummings.

## I.    BACKGROUND/PLEADINGS

Plaintiff Williams initially filed a form civil rights complaint with attachment pages.

(Compl., doc. 1.)  After Williams filed a separate brief, a motion to supplement, and a motion for

leave to amend his pleadings, the Court directed Williams to file an amended complaint that included

and incorporated all of his claims into one pleading. (Docs. 13, 15). Williams then filed an amended

complaint with attachment pages. (Am. Compl. (doc. 16)). After review of the amended complaint,

the Court issued an order directing Williams to file completed answers to the Court's questionnaire

as a more definite statement. (Order for More Definite Statement (MDS) (doc. 17)). Williams filed

an MDS, and thus his amended complaint and MDS are the pleadings subject to the Court's review.

In his amended complaint and more definite statement, Williams raises challenges arising

from his arrest, ensuing charge, and later conviction for driving while intoxicated. (Am. Compl. 7–15

(doc. 16); MDS 2–7 (doc. 18). He has named the following defendants: Judge John Weeks, 42nd

District Court, Callahan County, Texas; Callahan County District Attorney Shane Deel; private

attorney Quanah Parker; Trooper Joshua De La Garza, Texas Department of Public Safety (DPS);

Ashley Adkins, nurse, Hendrick Medical Center; unnamed security personnel, Hendrick Medical

Center; Bobby Beard, police officer, City of Baird, Texas; the Hendrick Medical Center; and

Callahan County, Texas. (Am. Compl. 3–4 (doc. 16)). Williams confirms in his MDS that he was

convicted of driving while intoxicated in cause number 6997 arising from his July 4, 2013 arrest, and

that his challenges to the actions of all defendants relate to that conviction. (MDS 2, 9 (Judgment-

Exhibit A) (doc. 18)).

Williams recites that City of Baird police officer Beard initially stopped and questioned him

in an area outside of the City of Baird's jurisdiction and then called Texas DPS Officer De La Garza

to the scene. (Am. Compl. 7–8 (doc. 16)). He complains that both officers listed inconsistent

information as to the location of the arrest, and he claims the officers were therefore without

jurisdiction to arrest him. *Id.* 8–9. Williams reports that although he initially gave consent for a

blood draw he later withdrew that consent. *Id.* 9. Williams alleges that De La Garza transported him

to the Hendrick Medical Center, and though De La Garza did not have a warrant, he directed nurse

Ashley Adkins to withdraw a blood specimen from Williams without consent, and without having

the requisite exigent circumstances. *Id.* 9–10. Williams also alleges that Office De La Garza and Hendrick Medical Center personnel restrained him while Adkins obtained the blood sample. *Id.* 10–11.

With regard to court proceedings, Williams alleges this his trial counsel Parker failed to advise him that there might be grounds to challenge the blood draw, and allowed him to enter a plea agreement without sufficiently explaining the significance of the blood draw evidence. *Id.* 12. As a result, Williams claims his entry of a plea was not knowing and voluntary. *Id.* As to prosecutor Shane Deel, Williams contends that Deel sought a coerced confession based upon Deel's failure to acknowledge that the blood evidence resulted from a warrantless blood draw. *Id.* 14. Williams also named presiding District Judge John Weeks, and Callahan County, Texas as defendants. *Id.* 14–15. In the amended complaint, Williams seeks to have his judgment of conviction for driving while intoxicated reversed or set aside, and he seeks an award of $1,000,000.00 in monetary damages. *Id.* 5. He seeks such damages to be able to support his family, and for the pain and suffering of being in prison. (MDS 5 (doc. 18)). When asked if he sustained a physical injury, Williams responded that he had suffered emotional stress for not being able to provide for his family. *Id.* 5.

## II.    PRELIMINARY SCREENING

Plaintiff is an inmate who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also sub-ject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if

it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

## III. ANALYSIS

### A.    No Color of Law

To assert a claim for violation of federal constitutional rights under 42 U.S.C. § 1983,[1] a plaintiff must set forth facts in support of both of its elements:(1) the deprivation of a right secured by the Constitution or laws of the United States; and (2) the deprivation was imposed by a person acting under color of law. *See West v. Atkins*, 487 U.S. 42, 48 (1988)(citing cases); *Resident Council of Allen Parkway Village v. U.S. Department of Housing and Urban Development*, 980 F.2d 1043,

---

[1]"Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983 (West 2012).

4

1050 (5th Cir.1993). As to Williams's allegations against his private attorney Quanah Parker, Williams has failed to satisfy the second element. Williams has failed to show that this private attorney acted under color of law. Because an attorney, whether private or appointed, owes his only duty to the client and not to the public or the state, his actions are not chargeable to the state. *See Thompson v. Aland*, 639 F. Supp. 724, 728 (N.D. Tex.1986)(citing *Polk County v. Dodson*, 454 U.S. 312, 318 (1981)); *see also Pete v. Metcalfe*, 8 F.3d 214, 216-17 (5th Cir. 1993). Furthermore, Williams has made no allegation that his attorney was acting on behalf of the government, and he has failed to sate any facts of any conspiracy between his counsel and any government official. Williams thus cannot show that his attorney was acting under color of law, so any claim for violation of his constitutional rights asserted through 42 U.S.C. § 1983 against defendant Parker must be dismissed.

Likewise, Williams names as a defendant private health care facility Hendrick Medical Center. (Am. Compl. 11 (doc. 16)). In the Court's order for more definite statement, Williams was directed to provide any facts related to whether the Hendrick Medical Center itself took any action under color of law. Williams only response was: "No in fact they violated the law to the max by assaulting Plaintiff Williams." (MDS 5 (doc. 18)). And in response to the Court's question about whether Williams new of facts of any Hendrick Medical Center policy or custom related to his claims, Williams argued that "Hendrick Medical Center should follow the law when required to do law work." *Id.* Thus, Williams has failed to allege any facts that the Hendrick Medical Center itself acted under color of law.[2]

**B.    No Claim to Support Municipal Liability**

---

[2]The Court will address the actions of the Hendrick Medical Center security personnel *infra.*

Williams also listed Callahan County, Texas as a defendant. Although a city or county is a "person" within the meaning of 42 U.S.C. § 1983 a municipal government may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978). The Supreme Court, in *Monell v. New York City Department of Social Services*, emphasized that a local government entity cannot be held liable under § 1983 on a *respondeat superior* basis:

> [T]herefore . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983.

*Id.* at 694. In his amended complaint Williams wrote: "Callahan County handled the administration of justice concerning this case and is therefore liable for any loss and/or punitive damage resulting from the outcome of the proceedings according to persons who acted on behalf of Callahan County, Texas." (Am. Compl. 15 (doc. 16)). But as any claim that Callahan County is responsible to Williams due to the actions of persons involved in the prosecution of him on behalf of the county is essentially a claim that the Callahan County is responsible on a vicarious liability or *respondeat superior* basis, such claim is without legal merit.

Instead of vicarious liability for the actions of government employees, § 1983 liability attaches against a local government entity only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 59 (2011) (quoting *Monell*, 436 U.S. at 692); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (liability "only where the municipality *itself* causes the constitutional violation at issue")(emphasis in original). An official municipal policy "includes the decisions of a

government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Prince v. Curry*, 423 F. App'x 447, 450 (5th Cir. 2011) (quoting *Connick*, 563 U.S. at 60.)

The Court directed Williams to provide any facts of "how Callahan County, Texas has any custom or policy that relates to any of the factual events made the basis of your claims." Order for MDS 3 (doc.17.) In response Williams wrote: "Callahan said [they] could not have a magistrate an [sic] yet they came and set me a bond the very day. They held me against my will as a citizen of the United States until money was rendered for my release. That in itself is unconstitutional to the rights of incent [sic] until proven guilty, 4, 5, 6, 8, 14th Amendment in court." (MDS 5 (doc. 18)). This responsive writing, without stating any facts of any policy or custom, amounts to an admission by Williams he has no support for any claim that the Callahan County could be liable to him.

### C.    Claims Barred by Absolute Immunity

#### (I).    Judicial Immunity

With regard to Williams's claims against John Weeks, judges are absolutely immune from claims for damages arising out of acts performed in the exercise of their judicial functions. *Mireless v. Waco*, 502 U.S. 9, 11 (1991)(citing *Forrester v. White*, 484 U.S. 219, 227-229 (1988) and *Stump v. Sparkman*, 435 U.S. 349, 360 (1978)); *see also, Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). Absolute judicial immunity can be overcome only if the plaintiff shows that the complained-of actions were nonjudicial in nature or that the actions were taken in the complete absence of all jurisdiction. *Mireless*, 502 U.S. at 11; *Boyd*, 31 F.3d at 284. Because the complained-of conduct by Judge Weeks was judicial in nature and was undertaken pursuant to the jurisdiction provided to the 42nd District Court, Callahan County, Texas, Judge Weeks is entitled to absolute immunity from

any monetary damages claims, and such claims will be dismissed.

(II).    Prosecutorial Immunity

Williams asserts claims against Callahan County District Attorney Shane Deel arising from

the prosecution of him. (Am. Compl. 14 (doc. 16)). But Deel is entitled to absolute immunity for any

claims for monetary damages asserted by Williams. The Supreme Court has consistently held that

acts undertaken by a government prosecutor in the course of his role as an advocate for the

government are cloaked in absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269-70 (1993);

*Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). The Supreme Court has further explained that

absolute immunity is afforded based upon whether the prosecutor is acting "in his role as advocate

for the State." *Imbler*, 424 U.S. at 431 n. 33. Here, even assuming Plaintiff's allegations against

Shane Deel are true, defendant Deel would have taken such action in his role as prosecutor on behalf

of the State of Texas. Thus, defendant Shane Deel is entitled to absolute prosecutorial immunity

from any claim for monetary damages, and such claims must be dismissed.

**D.    Failure to State a Claim Upon Which Relief May be Granted**

(I)    Fourth Amendment Excessive Force Claim

After review of Williams's pleadings the Court discerns that he seeks relief under the Fourth

Amendment on two separate grounds. First, he contends that the taking of the blood sample without

authorization by warrant was a violation of the Fourth Amendment. (Am. Compl. 9–10 (doc. 16);

MDS 3 (doc. 18)). This claim will be addressed *infra* as a part of the Court's analysis under *Heck*

*v. Humphrey*, 512 U.S. 477 (1994). It appears that Williams may also have a claim under the Fourth

Amendment that Officer De La Garza, Nurse Adkins, and the unnamed Hendrick Medical Center

security personnel used excessive force in obtaining the blood specimen. (MDS 4 (doc. 18)).

8

In reviewing such a claim, the Court notes first that the claim of a use of excessive force in obtaining the blood specimen is not barred by the *Heck* doctrine because a judgment in favor of Williams on the basis of a use of excessive force during the blood draw would not necessarily imply the invalidity of the conviction for DWI. *See Speirs v. City of Universal City, Texas*, No. 5-10-CV-0222- FB (NN), 2010 WL 2721438, at * 2 (W.D. Tex. July 8, 2010) , *rep. and rec, adopted*, Order and Judgment [ECF Nos. 24, 25] (W.D. Tex Aug. 17, 2010). In order to prove an excessive-use-of-force claim under the Fourth Amendment, a plaintiff must establish "'(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable.'" *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009) (internal citation omitted). But the facts as pleaded by Williams do not arise to these elements. Williams alleges in his amended complaint only that the security personnel and De La Garza "restrained" him to allow nurse Adkins to withdraw his blood. (Am. Compl. 10–11 (doc. 16)). And in the MDS, Williams writes only that "[t]wo officers plus Officer De La Garza held me to the chair to take the illegal blood draw." (MDS 4 (doc. 18)). Thus, to the extent Williams asserts a separate Fourth Amendment claim that excessive force was used in obtaining the blood sample, the Court finds that Williams has failed to state a claim upon which relief could be granted.

E.     **Limitation Upon Claims for Compensatory Damages under 42 U.S.C. § 1997e(e)**

As noted above, as a part of his request for relief from this Court, Williams seeks compensatory monetary damages. (Am. Compl. 5 (doc. 16)); (MDS 5–6 (doc. 18)). With the enactment of the PLRA, Congress placed a restriction on a prisoner's ability to recover compensatory damages without a showing of physical injury: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional

injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C.A. §

1997e(e) (West Supp. 2018). This physical injury requirement has long been recognized as applying

to claims under the Eighth Amendment. *See Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir.

2001); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Siglar v. Hightower*, 112 F.3d 191,

193-94 (5th Cir. 1997). The United States Court of Appeals for the Fifth Circuit then held that §

1997e(e) applied to claims under the First Amendment as well, noting "it is the nature of the relief

sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all

federal civil actions in which a prisoner alleges a constitutional violation, making compensatory

damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*,

404 F.3d 371, 375 (5th Cir. 2005). More recently, the Fifth Circuit rejected an inmate's claim that

§ 1997e(e) does not apply to a Fourth Amendment claim arising from a strip search, emphasizing

that in *Geiger* the court noted that "1997e(e) applies to *all federal civil actions*," and noting that

"[r]egardless of [Plaintiff's] invocation of the Fourth Amendment, his failure to allege any physical

injury preclude his recovery of any compensatory damages for emotional or mental injuries

suffered." *Hutchins v. McDaniels*, 512 F.3d 193, 196 (5th Cir. 2007) (emphasis in original). Another

district court has applied the language of *Geiger* to hold that an inmate's claims for compensatory

damages for violation of the Fourteenth Amendment, without showing physical injury, are barred

by § 1997e(e). *See Rogers v. Newman*, No.5:04-CV-193-DCB-JCS, 2006 WL 1520298, at *1 (S.D.

Miss. April 7, 2006).

In the order for a more definite statement, the Court asked Williams to recite if he suffered

any physical injury. In response, Williams provided two words the Court cannot discern as well as

claiming that he "suffered . . . an emotional stress as well as my family were now I cannot provide

10

for them [sic]." (MDS 5 (doc. 18)). Thus, applying the above referenced holdings to the instant case, no matter the substantive constitutional violations asserted by Williams, his failure to allege physical injury bars any claim for compensatory monetary damages.

F.    **Application of *Heck v. Humphrey***

With regard to the remaining claims against Officer Beard, Officer De La Garza, Nurse Adkins, and the Hendrick Medical Security personnel, and as an alternative ground for dismissal of the claims against the defendants already dismissed, the Court considers application of the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). In the *Heck* case, the Supreme Court held that when a successful civil rights action would necessarily imply the invalidity of a plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Id.* at 486-87. A plaintiff does so by achieving "favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam). "[T]he *Heck* determination depends on the nature of the offense and of the claim." *Arnold v. Slaughter*, 100 F. App'x. 321, 323 (5th Cir. 2004) (citation omitted). Although the Heck opinion involved a bar to claims for monetary damages, a dismissal of a claim for injunctive and/or declaratory relief may also be made pursuant to *Heck. See Reger v. Walker*, 312 F. App'x. 624, 625 (5th Cir. 2009)(noting that claims, "whether for damages, declaratory judgment, or injunctive relief" are not cognizable in a § 1983 action because they imply the invalidity of conviction); *see also Clarke v. Stadler*, 154 F.3d 186, 190-91 (5th Cir. 1998)(en banc)(holding that a claim for prospective

11

injunctive relief that would imply the invalidity of a prisoner's conviction may be dismissed without prejudice subject to the rule of *Heck v. Humphrey*).

First, the Court notes that Williams's claim in this federal civil suit that Officers Beard and De La Garza lacked jurisdiction to arrest him at the particular location where he was detained is barred by *Heck. See Williams v. Taylor*, No.08-0433-KD-N, 2011 WL 3861586, * 1 (S.D. Al. Sep. 1, 2011) ("The court also notes that William's claims of lack of probable cause to arrest and the lack of jurisdiction to arrest are not cognizable claims") (citing *Heck*, 512 U.S. at 487).

Second, as to Williams's Fourth Amendment challenge to the legality of the blood draw while he was seized by officers, under the circumstances before the Court, such claim is barred by *Heck*. Williams acknowledged in his more definite statement that the challenged arrest and subsequent blood draw resulted in a finding of .158 grams of alcohol per 100 milliliters of blood, and that the evidence of that blood draw was the basis for the "Driving While Intoxicated 3rd or More" indictment against him to which he later pleaded guilty. (MDS 2, 11–12 (doc. 18)). Thus, the blood draw sample obtained while Williams was detained was used to obtain the driving while intoxicated conviction. (MDS 2, 9–12 (doc. 18)). A favorable ruling on Williams's challenges to the validity of the seizure of blood evidence in this proceeding would necessarily imply the invalidity of Williams's conviction in the state criminal case. *See Hicks v. Johnson County Law Enforcement Ctr.*, 134 F. 3d 368, 1997 WL 811680 *1 (5th Cir. 1997) ("If the blood sample was used to obtain the criminal conviction, as the district court correctly reasoned, the constitutionality of the seizure of the sample would implicate the validity of Hick's conviction") (citation to district court omitted).

But Williams has not shown that his DWI conviction has been reversed or set aside in any of the manners listed in *Heck v. Humphrey*. As Williams has not shown that his conviction has been

of the manners listed in *Heck v. Humphrey*. As Williams has not shown that his conviction has been invalidated under *Heck*, his remaining claims that the officers lacked jurisdiction and that his arrest and seizure of blood evidence was invalid, whether such claims be for monetary damages, injunctive relief, or for declaratory relief, are not cognizable and must be dismissed. *See Heck*, 512 U.S. at 487-88; *see also Hicks*, 1997 WL 811680 at *1 ("Because Hicks does not contend that his efforts to obtain habeas relief were successful, Hicks has not satisfied the prerequisites for filing a claim under the rule in *Heck . . . .*"). The claims are "legally frivolous" within the meaning of 28 U.S.C. § 1915 and should be dismissed "with prejudice to their being asserted again until the *Heck* conditions are met." *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

## IV.    RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that all Joseph Williams's claims against Quanah Parker, the Hendrick Medical Center, and Callahan County, Texas, and his claim of excessive force in violation of the Fourth Amendment against Joshua De La Garza, Ashley Adkins, and the unnamed Hendrick Medical security personnel, should be **DISMISSED WITH PREJUDICE** under authority of 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(i) and (ii); it is **further RECOMMENDED** that Williams's claims for monetary damages against John Weeks and Shane Deel should be **DISMISSED WITH PREJUDICE** under authority of 28 U.S.C. § 1915A(b)(2) and 28 U.S.C. § 1915(e)(2)(B)(iii); and it is **finally RECOMMENDED** that all Williams remaining claims should be **DISMISSED WITH PREJUDICE** to being asserted again until the *Heck v. Humphrey* conditions are met,[3] under authority of 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

---

[3]*See Johnson*, 101 F.3d at 424.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.

Any party may object to this Report and Recommendation. A party who objects to any part of this Report and Recommendation must file specific written objections within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and identify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. The failure to file specific written objections will bar the aggrieved party from attacking on appeal the factual findings, legal conclusions, and recommendation set forth by the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds,* 28 U.S.C. § 631(b)(1) (extending the time to file objections from ten to fourteen days), *as recognized in ACS Recovery Servs., Inc. V. Griffin*, 676 F.3d 512, 521 n. 5 (5th Cir. 2012).

**SO ORDERED.**

Signed April 16th, 2019.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE